CITY AND COUNTY OF SAN FRANCISCO | OFFICE OF THE CITY ATTORNEY



DENNIS J. HERRERA
City Attorney

JAMES F. HANNAWALT
Deputy City Attorney

DIRECT DIAL: (415) 554-3913
E-MAIL: james.hannawalt@sfgov.org

April 28, 2008

Via Fax & U.S. Mail

Harriet Ross, Esq.
One Embarcadero Center, Suite 500
San Francisco, Ca 94111

Re: Givens v. CCSF et al.
U.S. Dist. Court Case No. C07 2861

Dear Ms. Ross:

This letter is written to meet and confer pursuant to L.R. 37-1(a). There are at least three areas of inquiry that your client improperly refused to answer questions about at his deposition.

Family Members

Mr. Givens refused to provide information about the identity of his family members. This information is discoverable because these people are potential witnesses or may have information that could lead to the discovery of witnesses and/or relevant evidence.

Real Estate Investment Discovery

Mr. Givens refused to provide information about his "real estate investment" business, which Mr. Givens stated in his verified interrogatory responses earned him $12,000 per month in 2006. Plaintiff is making a substantial income loss claim. You and your client refused the offer of a stipulation that if no income or economic loss is claimed at trial in connection with the real estate investment business, then I would not ask about the details of the "real estate investment" business. So the City must prepare to defend the claim that Mr. Givens once made a lot of money in real estate investments that he can no longer earn due to the alleged use of excessive force on October 23, 2006.

The first step in developing the defense to plaintiff's income loss claim is to ascertain whether the claims are true. Your client's offer to provide tax returns and bank statements may be useful. But given your client's history of using other people's financial documents, the City reasonably seeks to verify that a viable business enterprise actually existed and that it earned the tens of thousands of dollars Mr. Givens claims. To do this, we seek to know where Mr. Givens conducted his business, with whom he conducted his business, what properties were bought and sold, how title was held and transferred, which financial institutions were involved in the real estate transactions, etc. All Mr. Givens would tell us is that he and his brother bought unspecified foreclosed residential properties in undisclosed locations and resold them, without providing any specific information that would allow confirmation or refutation of the income claimed. Despite a document production request accompanying the deposition notice, no financial documents or business records in support of plaintiff's wage loss claim have been provided. Therefore, I respectfully request that you reconsider your position on this issue and

FOX PLAZA · 1390 MARKET STREET, 6TH FLOOR · SAN FRANCISCO, CALIFORNIA 94102
RECEPTION: (415) 554-3800   FACSIMILE: (415) 554-3837

n:\lit\li2007\071621\00480384.doc

CITY AND COUNTY OF SAN FRANCISCO                                OFFICE OF THE CITY ATTORNEY

Letter to
Harriet Ross, Esq.
One Embarcadero Center, Suite 500
San Francisco, Ca 94111
Page 2
May 9, 2008

permit questioning about the specifics of Mr. Givens real estate investment business after you have provided all documents responsive to the document production request accompanying the deposition notice.

<u>Prior Arrests By SFPD</u>

Despite an agreement at the first session of plaintiff's deposition, Mr. Givens refused to answer questions regarding his eleven prior arrests by the San Francisco Police Department. Plaintiff's prior interactions with the San Francisco Police Department are discoverable and relevant to the issue of bias. *Heath v. Cast* 813 F.2d 254 (1986). Mr. Givens refusal to answer questions on April 23, 2008 regarding his prior arrests by the SFPD was disappointing because it was agreed at the first session of Mr. Givens deposition on April 15, 2008 that we would suspend the deposition so you and your client could review the incident reports that were provided to you on April 15 and that we would reconvene for questioning related to he prior arrests. If you not made this agreement, then we would not have incurred the expense of a second, non-productive deposition session.

Please advise in writing within five days whether you and your client have changed your position about refusing to provide information concerning the above-referenced areas of inquiry, and whether you and your client agree to reimburse the City for the expense incurred for the second session of Mr. Given's deposition at which he refused to answer questions related to his prior arrests. Unless this deposition discovery is provided, the City will make a motion to compel this testimony. I look forward to hearing from you regarding this matter.

Very truly yours,

DENNIS J. HERRERA
City Attorney


James F. Hannawalt
Deputy City Attorney

```
 1   NOELLE J. OTTOBONI & ASSOCIATES
     Certified Shorthand Reporters
 2   106 Madison Avenue
     San Bruno, California 94066
 3   650.588.7404
     Fax 650.866.4430
 4
 5              UNITED STATES DISTRICT COURT
 6             NORTHERN DISTRICT OF CALIFORNIA
 7
 8
     HENRY GIVENS,                          )
 9                                          )
                    Plaintiff,              )
10                                          )
       vs.                                  )     No. C 07 2861 SI
11                                          )
     CITY AND COUNTY OF SAN FRANCISCO,      )
12   et al.,                                )
                                            )
13                  Defendants.             )
     _____)
14
15
16
17              DEPOSITION OF HENRY GIVENS
18                Tuesday, April 15, 2008
19                      VOLUME I
20
21
22
23   Reported by:
24   THERESA C. McALINDON, C.S.R. No. 6271
25
```

CERTIFIED COPY
Noelle Ottoboni & Associates

1

```
1    Q.       Do you notice that your vision is worse when you're
2    reading as opposed to just looking out at objects further
3    away?
4    A.       Both, actually.
5    Q.       I want to ask you some questions about past arrests.
6    Do you recall being arrested in June of 2005?
7            MS. ROSS:  I don't think arrests are relevant.  I
8    think only convictions.
9            MR. HANNAWALT:  Well, I think that to the extent
10   that there's testimony about the way that the arrest in
11   October 2006 occurred, to the extent that there's evidence of
12   a pattern and practices, I think that it is relevant.  So
13   I'm going to ask --
14           MS. ROSS:  Relevant with regard to how the police
15   officers arrested in this case but not relevant to his
16   experience with other officers.
17           MR. HANNAWALT:  I think it's relevant with regard to
18   his interaction with other officers.  I think that, you
19   know, a judge can decide about its admissibility at trial,
20   but we're here in discovery at deposition and I intend to
21   inquire.
22           MR. NEWDORF:  He's also sued police officers in this
23   lawsuit, so his interactions with police in other cases is
24   relevant to bias, motivation.
25           THE WITNESS:  Time out.  Who are you?
```

57

```
1              MS. ROSS:  He's a co-counsel.
2              THE WITNESS:  He's for the --
3              MS. ROSS:  Yes.
4              THE WITNESS:  Okay.  No, I'm not going to answer
5    it.
6              MR. HANNAWALT:  Q.  So you're not going to answer
7    questions about your arrest in June 2005?
8    A.        No.  That's not relevant to 2006.
9              MS. ROSS:  I don't believe you've given me any of
10   that on my request, the documents.
11             MR. NEWDORF:  Miss Ross, you know, the court will
12   give us an order to go into his arrests.  Do you want to
13   take a moment to talk to your client about this so we don't
14   have to go through that procedure?
15             MS. ROSS:  I'd rather go through the procedure,
16   because you haven't given me any of that information that
17   you're looking at right there.
18             MR. HANNAWALT:  You haven't asked for it.
19             MS. ROSS:  Yes, I have.  I've asked for all
20   documents that you have.
21             MR. HANNAWALT:  Well, you asked for documents
22   related to this incident, and we provided those.  I've
23   received no document production request with regard to prior
24   incident reports, and frankly, these are public documents
25   equally available to you.
```

```
 1              MS. ROSS:  I'm sure that they are.
 2              MR. HANNAWALT:  Well --
 3              MS. ROSS:  I'm entitled to anything that you're
 4    going to be using, whether I had it or it's available to me
 5    or not.
 6              MR. HANNAWALT:  I have an extra copy, if you want to
 7    mark them.  If you'll instruct the client to answer the
 8    question, we'll mark the exhibits and we'll proceed.
 9              THE WITNESS:  And I'm not going to answer the
10    question.  She should have had the documents.  This is
11    something just being thrown on the table here.  Come on now.
12              MS. ROSS:  If they're convictions, you're entitled
13    to use them against him, but not just police encounters.
14              MR. HANNAWALT:  I respectfully disagree, and the
15    court may decide one way or the other.  For purposes of
16    conducting a discovery deposition, it's a broad area.  We
17    have situations where Mr. Givens has run and resisted arrest
18    on prior occasions, and I'm going to inquire about those.
19    Apparently he's not going to answer.  What I'm prepared to
20    do is mark some exhibits.  You'll have copies of the
21    exhibits if you order the deposition, and we'll have to talk
22    to the judge.
23              MS. ROSS:  I would like a copy of the exhibits
24    without ordering the deposition.
25              MR. HANNAWALT:  Okay.
```

```
 1              MR. NEWDORF:  Want to take a couple minute break for
 2   the court reporter?
 3              MR. HANNAWALT:  Why don't we do that.  Is that all
 4   right?
 5              THE VIDEOGRAPHER:  This concludes tape No. 1, and
 6   we're off the record at 3:07.
 7              (Recess taken.)
 8              THE VIDEOGRAPHER:  Starting tape No. 2, deposition
 9   of Mr. Henry Givens, and we are back on the record at 3:27.
10              MR. HANNAWALT:  Off the record counsel had a
11   discussion concerning this area of inquiry of Mr. Givens'
12   prior arrests and interactions with the San Francisco Police
13   Department.  It's my understanding that we've worked out an
14   agreement, which is as follows, that we, the City, will
15   provide you copies of the incident reports we have relating
16   to 12 prior arrests by the San Francisco Police Department,
17   and the understanding is that you feel it necessary to have
18   an opportunity to look at these materials before Mr. Givens
19   testifies but you're agreeing that we will continue this
20   portion of the deposition to Wednesday, April 23 at 9:00
21   a.m., at which time you will instruct Mr. Givens to respond
22   to questions related to these prior arrests.  Is that the
23   agreement?
24              MS. ROSS:  Also, I also stated that we would go over
25   some of the information on the officers themselves,
```

```
 1   especially concerning the lawsuits that they were involved
 2   with, and other disciplinary actions, and we would stipulate
 3   to a protective order for that information.
 4         MR. HANNAWALT:  Well, when you said we would go
 5   over, it's my understanding on that separate issue that we'll
 6   meet and confer on Monday, April 21 by telephone concerning
 7   the scope of that discovery and the nature of any protective
 8   order.  That's the same offer that I made at the time of the
 9   depositions of Officers Mason, Cabuntala, and Lazano
10   concerning your request at that deposition for disciplinary
11   and employment records.
12         MS. ROSS:  Yes.  It would be also for any officers
13   involved in the case other than the ones that testified at
14   the deposition.
15         MR. HANNAWALT:  Well, again, I'm prepared to meet
16   and confer about that.  I'm still prepared to do that.  And
17   I believe we have an appointment to meet and confer on April
18   21 at 2:00.  But again, as I understand it, that's a separate
19   discovery issue from what we're doing here today, which is
20   deposing Mr. Givens, and I intended to ask questions
21   concerning these dozen arrests where there are similar issues
22   involved of necessity for the use of force to affect arrest.
23   We have an agreement that I'll give you these police reports.
24   We'll come back, make arrangements to come back here next
25   Wednesday to resume questioning on those topics, correct?
```

```
 1              MS. ROSS:  Correct.
 2              MR. HANNAWALT:  Thank you.
 3              THE WITNESS:  Miss Ross, it still wasn't clearly
 4    stated that he gives you the information.  He said it's
 5    going to be discussed on the phone.  It still doesn't mean
 6    he's going to give you the information that we need against
 7    these officers.  That's what I'm agreeing to, if he gives
 8    you the information regarding these lawsuits against these
 9    officers, then I'll agree to testify.  Other than that,
10    we're not going to testify.  I'm not going to say anything.
11              MR. HANNAWALT:  We've made the record of the
12    agreement.
13              THE WITNESS:  You said that's per phone.  That's
14    not written in stone.
15              MR. HANNAWALT:  Q.  Mr. Givens, I appreciate your
16    comments.  They're on the record.  We've made a record of
17    the agreement of counsel.  We're going to proceed with the
18    deposition here today.
19    A.         You can throw me an off if you want to.  The final
20    decision is up to me.  I'm still not going to say anything
21    until we get those records to Miss Ross.  I'm telling you
22    right now.  We're just going to waste your time on the 23rd.
23    If you do not get the records against the police officers
24    like you have arrest records against me, some dirt on them as
25    well, we want it.
```

```
 1   A.         No comment.

 2   Q.         Would you know how to contact that person today?

 3   A.         No.

 4   Q.         Have you ever been a party to any other civil
 5   lawsuit other than this one?

 6   A.         No, never.

 7   Q.         How many times in the five years before October 2006
 8   were you incarcerated?

 9   A.         We're not going to answer that.  We've spoken about
10   that already.  Get the records to Miss Ross and we answer
11   those later on the 23rd.

12   Q.         Actually that had to do with arrests and
13   circumstances of arrests.  Right now I'm trying to establish
14   how much time you were outside the work force.

15   A.         We'll talk about that on the 23rd.

16   Q.         Okay.  So that will be another topic for
17   discussion.  We're just about --

18              MS. ROSS:  I think if you see what his income tax
19   returns are, that is adequate to show what his income is.
20   Whether he was in jail, or whatever, it doesn't matter.
21   It's what his income was.  Right?  You want to find out how
22   much he lost in his income.

23              MR. HANNAWALT:  I also want to find out the
24   probability that he will be employed in the future.

25              MS. ROSS:  Why don't you see if he has any problems
```

165

```
 1    NOELLE J. OTTOBONI & ASSOCIATES
      Certified Shorthand Reporters
 2    106 Madison Avenue
      San Bruno, California 94066
 3    650.588.7404
      Fax 650.866.4430
 4
 5              UNITED STATES DISTRICT COURT
 6             NORTHERN DISTRICT OF CALIFORNIA
 7
 8
      HENRY GIVENS,                    )
 9                                     )
                    Plaintiff,         )
10                                     )
         vs.                           )    No. C 07 2861 SI
11                                     )
      CITY AND COUNTY OF SAN FRANCISCO,)
12    et al.,                          )
                                       )
13                  Defendants.        )
      _____)
14
15
16
17            DEPOSITION OF HENRY GIVENS
18              Wednesday, April 23, 2008
19                   VOLUME II
20
21
22
23    Reported by:
24    THERESA C. McALINDON, C.S.R. No. 6271
25
```

CERTIFIED COPY
Noelle Ottoboni & Associates

173

```
1   A.        You're forced to do it.
2   Q.        Because you are adopting an attitude and a
3   responsiveness that you refuse to tell me who your real
4   estate investment partner was last time.  You told me was a
5   brother.  Today you told me you have multiple brothers.
6   A.        I told you a brother with real estate investment
7   thing.  It has nothing to do if I have other brothers or not.
8   You didn't ask if they were involved in the business.  Make
9   sure you have it clear on the record.  Again, quit trying to
10  be so crafty, because you're not.
11  Q.        So as I understand it, your only brother --
12  A.        Okay.
13  Q.        -- involved in real estate is Robert Lee Carter.
14  He lives in San Bernardino, correct?
15  A.        That is correct.
16  Q.        Okay.
17  A.        It's like pulling teeth with every question with
18  you, man.
19  Q.        Agreed.  So I think, for the record, that we're
20  done for today.  I'm going to make a motion to compel
21  further responses with regard to the exhibits, the arrests
22  that are documented by Exhibit 4 through 14 -- excuse me.
23  Exhibits 4 through 13.  I'm going to compel further
24  responses with regard to the nature of Mr. Givens real estate
25  investments, and how the money is generated.  It may or may
```

1  not be reflected in documentation that's provided, and I'm
2  going to be requesting sanctions in connection with the
3  motion to compel.
4      MS. ROSS:  What motion to compel?
5      MR. HANNAWALT:  The further responses to the
6  deposition questions.  And for the record, I'll just be very
7  clear, the prior arrests are relevant because they go to his
8  state of mind on October 2006 when he fled and resisted this
9  arrest.  They go to a pattern of flight followed by
10 resisting, resulting in the use of force during arrests over
11 a pattern of at least a dozen interactions with the San
12 Francisco Police Department, and the Daly City and San
13 Bernardino Police Departments.  So I think that inquiry into
14 these areas is relevant for discovery purposes, and relevant
15 at trial.
16     With regard to the wage loss claim, I have a
17 verified interrogatory response, which even through
18 clarification suggestions that the claim is nearly $8,000 per
19 month for real estate investments, and there's been a series
20 of refusals to respond about to the nature of that business.
21 All I know from more than, probably more than an hour of
22 inquiry, is that foreclosed residential properties were
23 bought and sold.  I don't know where they're located.  I
24 don't know who these people are that were involved in these
25 investments.

1              MS. ROSS:  What difference does it make?

2              MR. HANNAWALT:  It makes --

3              MS. ROSS:  You're concerned with his income.

4              MR. HANNAWALT:  I'm concerned with verifying --

5              MS. ROSS:  And he has a verification of his income.

6              MR. HANNAWALT:  Harriet, you can make the argument

7    to the court.  The fact is his credibility is at the core of

8    this lawsuit, and it's at the core of this claim of damages

9    in excess of $80,000, and you can show me bank statements

10   that may or may not reflect anything.  They may or may not

11   be his bank statements.  I'm entitled to --

12             THE WITNESS:  We have everything what you need.

13   Okay?  We told you this already.  Okay?  I'll get

14   everything to Miss Ross.  Why you badgering her?

15             MR. HANNAWALT:  I'm making a statement for the

16   record.

17             THE WITNESS:  I'm making a statement for the record

18   as well.  We will get you every piece of paperwork which you

19   need relating to my income, and the people who the property

20   was sold to.  Okay?  We told you this.

21             MR. HANNAWALT:  Will you --

22             THE WITNESS:  It will be mailed to her office.

23             MR. HANNAWALT:  Will you provide me with all of the

24   --

25             THE WITNESS:  I'll provide you with as much

243

```
1    information which I do have in my possession at the time.
2           MR. HANNAWALT:  Q.  Do you have the escrow documents
3    for purchase and sale --
4    A.     We have everything.  Of course that's public
5    record.  That's easy to get.
6           MS. ROSS:  He doesn't need that.
7           MR. HANNAWALT:  I do.  I want it.
8           MS. ROSS:  Why do you need it?  Well, then go to the
9    real estate company and get it, escrow.
10          MR. HANNAWALT:  Which one?  Which one?  He won't
11   answer the questions about his business.
12          THE WITNESS:  And that's none of your business to
13   know what clients I've sold and bought real estate to as
14   well.  That's public record.
15          MR. HANNAWALT:  How is it public record if I don't
16   know --
17          THE WITNESS:  It's very much so public record.  You
18   know you can go down to City Hall and get this information if
19   I provide the names.
20          MR. HANNAWALT:  So give me the names.
21          THE WITNESS:  I'll give this to my attorney, if
22   that's okay for me to do.  If it's not relevant to you, I'm
23   not going to give you anything.  I'll give it to Miss Ross.
24   If she says okay --
25          MR. HANNAWALT:  So I'm going to compel this,
```

244

```
 1   because I think it's relevant, and I think I'm entitled to do
 2   discovery.
 3              THE WITNESS:  You should let the judge make that
 4   decision.  You are not the judge.
 5              MS. ROSS:  Yes, I think you should do that and not
 6   argue.
 7              MR. HANNAWALT:  That's exactly what we're going to
 8   do.
 9              MS. ROSS:  See what the judge will do.
10              MR. HANNAWALT:  To complete my statement for the
11   record, I'm entitled to determine whether or not these real
12   estate investments actually happened and whether or not there
13   was anyone involved in these real estate investments.
14              MS. ROSS:  Well, if he reported to the IRS for his
15   income, I think that's pretty good verification of his
16   income.  Don't you agree?
17              MR. HANNAWALT:  I don't know.  I don't know.  I
18   haven't seen any documents.
19              MS. ROSS:  I said if he does produce his income tax
20   returns, that should be a fairly good piece of documentation
21   for income.  One doesn't pay the IRS income tax unless you
22   have made an income.
23              MR. HANNAWALT:  Well, an income may be different
24   from the veracity of the information being provided in sworn
25   interrogatory responses.  With that, I think we're
```